Steven J. Brady, Esq. (SBN 116651)
Dylan F. Pollard (SBN 180306)
Steven Stein, Esq. (SBN 52829)
BRADY LAW GROUP
1015 Irwin Street
San Rafael, CA  94901
Telephone:     (415) 459-7300
Fax:                (415) 459-7303
E-Mail:          mail@bradylawgroup.com

*Attorneys for Plaintiffs, RICHARD SELLERS, MARIA BENGE, LINDA FARRIS, LISA MCDOUGAL, IRENE TRUJILLO, REYNALDO TRUJILLO, JR., JOSE TRUJILLO, JESSICA TRUJILLO, FRANCISCA TRUJILLO, RAFAEL TRUJILLO, CHARLES WOLFF, DONALD WOLFF, ANNA POLING, and GERALDINE DENDINGER*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD SELLERS, an individual; MARIA BENGE, an individual LINDA FARRIS, an individual; LISA MCDOUGAL, an individual; IRENE TRUJILLO, individual; REYNALDO TRUJILLO, JR., an individual; JOSE TRUJILLO, an individual; JESSICA TRUJILLO, an individual; FRANCISCA TRUJILLO, an individual; RAFAEL TRUJILLO, an individual; CHARLES WOLFF, an individual; DONALD WOLFF, an individual; ANNA POLING, an individual; GERALDINE DENDINGER, an individual; <br><br>       Plaintiffs, <br><br> vs. <br><br> JANSSEN RESEARCH & DEVELOPMENT, LLC f/k/a JOHNSON AND JOHNSON PHARMACEUTICALS RESEARCH AND DEVELOPMENT LLC; JOHNSON & JOHNSON COMPANY; JANSSEN ORTHO, LLC; JANSSEN PHARMACEUTICALS, INC., f/k/a | Case No.: <br><br> **COMPLAINT FOR WRONGFUL DEATH BASED ON:** <br><br> 1. **STRICT PRODUCT LIABILITY-FAILURE TO WARN** <br> 2. **STRICT PRODUCT LIABILITY-DEFECTIVE DESIGN;** <br> 3. **NEGLIGENCE;** <br> 4. **NEGLIGENCE-FAILURE TO WARN;** <br> 5. **NEGLIGENCE-NEGLIGENT DESIGN;** <br> 6. **NEGLIGENT MISREPRESENTATION;** <br> 7. **BREACH OF EXPRESS WARRANTY;** <br> 8. **BREACH OF IMPLIED WARRANTY;** <br> 9. **FRAUD;** <br> 10. **PUNITIVE DAMAGES.** <br><br> **DEMAND FOR JURY TRIAL** |

Pollard ● Bailey

1  ORTHO-MCNEIL-JANSSEN
   PHARMACEUTICALS, INC.;
2  BAYER CORPORATION; BAYER AG;
   BAYER HEALTHCARE LLC; and BAYER
3  HEALTHCARE PHARMACEUTICALS
   INC.; and JOHN DOES 1-100,
4
       Defendants.
5

## COMPLAINT & JURY DEMAND

COMES NOW the Plaintiffs, by and through the undersigned counsel, and hereby submits this Complaint against Defendants Janssen Research & Development, LLC f/k/a Johnson and Johnson PHARMACEUTICALS Research And Development LLC; Johnson & Johnson Company; Janssen Ortho, LLC; Janssen PHARMACEUTICALS, Inc. f/k/a Janssen PHARMACEUTICALS Inc., f/k/a Ortho-McNeil-Janssen PHARMACEUTICALS, Inc.; Bayer Corporation; Bayer AG; Bayer Healthcare, LLC; And Bayer Healthcare PHARMACEUTICALS, Inc.; and John Does 1-100, (hereinafter collectively "Defendants") for equitable relief, monetary restitution, and compensatory and punitive damages, arising from the injuries and ultimate deaths to Plaintiffs' decedents herein as a result of the exposure of their respective decedents to the PHARMACEUTICALS product Xarelto ® and hereby allege as follows:

## PARTIES

1.      Decedent Grace Sellers, was citizen of the State of California, and a resident of Santa Clara County. Decedent Grace Sellers suffered injuries, damages and death as a direct result of her ingestion of the PHARMACEUTICALS product Xarelto®. Plaintiff Richard Sellers at all times relevant hereto, was and currently is a citizen of the State of California, and a resident of Santa Clara County. Plaintiff Richard Sellers is the widower and natural heir of Decedent Grace Sellers and has standing to bring this Action pursuant to California Code of Civil Procedure Section 377.60.

2.      Decedent Terry Benge, was citizen of the State of California, and a resident of Stanislaus County. Decedent Terry Benge suffered injuries, damages and death as a direct

Pollard ● Bailey

1   result of his ingestion of the PHARMACEUTICALS product Xarelto®.  Plaintiff Maria Benge

2   at all times relevant hereto, was and currently is a citizen of the State of California, and a

3   resident of Stanislaus County.  Plaintiff Maria Benge is the widow and natural heir of Decedent

4   Terry Benge and has standing to bring this Action pursuant to California Code of Civil

5   Procedure Section 377.60.

6        3.    Decedent Dale Farris, was citizen of the State of Kentucky, and a resident of

7   Bullitt County.  Decedent Dale Farris suffered injuries, damages and death as a direct result of

8   his ingestion of the PHARMACEUTICALS product Xarelto®.  Plaintiff Linda Farris at all

9   times relevant hereto, was and currently is a citizen of the State of Kentucky, and a resident of

10  Bullitt County.  Plaintiff Linda Farris is the widow and natural heir of Decedent Grace Sellers

11  and has standing to bring this Action pursuant to California Code of Civil Procedure Section

12  377.60.

13       4.    Decedent Walter G. McDougal, Jr., was citizen of the State of Maryland, and a

14  resident of Prince George's County.  Decedent Walter G. McDougal, Jr. suffered injuries,

15  damages and death as a direct result of his ingestion of the PHARMACEUTICALS product

16  Xarelto®.  Plaintiff Lisa McDougal at all times relevant hereto, was and currently is a citizen of

17  the State of Maryland, and a resident of Prince George's County.  Plaintiff Lisa McDougal is

18  the widow and natural heir of Decedent Walter G. McDougal, Jr. and has standing to bring this

19  Action pursuant to California Code of Civil Procedure Section 377.60.

20       5.    Decedent Reynaldo Trujillo, was citizen of the State of Texas, and a resident of

21  El Paso County.  Decedent Reynaldo Trujillo suffered injuries, damages and death as a direct

22  result of his ingestion of the PHARMACEUTICALS product Xarelto®.  Plaintiffs Irene

23  Trujillo, Reynaldo Trujillo, Jr., Jose Trujillo, Jessica Trujillo, Francisca Trujillo and Rafael

24  Trujillo at all times relevant hereto, were and currently are citizens of the State of Texas, and are

25  residents of El Paso County.  These plaintiff have the following relationship with decedent

26  Reynaldo Trujillo:  Irene Trujillo (daughter), Reynaldo Trujillo, Jr. (son), Jose Trujillo (son),

27  Jessica Trujillo (daughter), Francisca Trujillo (daughter), Rafael Trujillo (son), and are all

3

**COMPLAINT FOR WRONGFUL DEATH**

Pollard ● Bailey

1  natural heirs of Decedent Reynaldo Trujillo and thus have standing to bring this Action pursuant
2  to California Code of Civil Procedure Section 377.60.

3     6.  Decedent Richard E. Wolff, was citizen of the State of Montana, and a resident
4  of Cascade County. Decedent Richard E. Wolff suffered injuries, damages and death as a direct
5  result of his ingestion of the PHARMACEUTICALS product Xarelto®. Plaintiffs Charles
6  Wolff, Donald Wolff, Anna Poling and Geraldine Dendinger at all times relevant hereto, were
7  and currently are citizens of the State of Nevada (Clark County), Washington (King County),
8  Montana (Park County) and Minnesota (Stearns County), respectively. These plaintiff have the
9  following relationship with decedent Richard E. Wolff: Charles Wolff (brother), Donald Wolff
10  (brother), Anna Poling (sister), and Geraldine Dendinger (sister), and are all natural heirs of
11  Decedent Richard E. Wolff and thus have standing to bring this Action pursuant to California
12  Code of Civil Procedure Section 377.60.

13     7.  Defendant, JANSSEN RESEARCH & DEVELOPMENT, LLC (hereinafter
14  "Janssen R & D"), f/k/a JOHNSON AND JOHNSON PHARMACEUTICALS RESEARCH
15  AND DEVELOPMENT LLC, is a limited liability company organized, under the laws of New
16  Jersey, with its principal place of business located at 920 U.S. Route 202, Raritan, New Jersey.
17  Janssen R & D's sole principal or member is Centocor Research Development, Inc., (hereinafter
18  "Centocor") a Pennsylvania corporation with its principal place of business and nerve center
19  located at 200 Great Valley Parkway, Malvern, Pennsylvania. Centocor is a subsidiary or
20  division of Johnson & Johnson, and at all times relevant herein, engaged in the research, design,
21  marketing, sale, and distribution of Xarelto®.

22     8.  Defendant JOHNSON & JOHNSON (hereinafter "J&J"), is a fictitious name
23  adopted by Defendant JOHNSON & JOHNSON COMPANY, a New Jersey corporation which
24  has its principal place of business at One Johnson & Johnson Plaza, New Brunswick, Middlesex
25  County, New Jersey 08933. At all times relevant herein, Defendant JOHNSON & JOHNSON
26  was engaged in the business of designing, developing, manufacturing, testing, packaging,
27  promoting, marketing, distributing, labeling, and/or selling Xarelto®.

**COMPLAINT FOR WRONGFUL DEATH**

Pollard ● Bailey

9.      Defendant Janssen R & D is the holder of the approved New Drug Application ("NDA") for Xarelto®, as well as the supplemental NDA. Janssen R & D, Johnson & Johnson and Centocor all transact substantial business within the state of Florida and throughout the United States, including the research, manufacture, sale, distribution and marketing of Xarelto®, as set forth herein.

10.     Defendant, JANSSEN ORTHO, LLC ("Ortho") is a Delaware limited liability company with a principal place of business in Puerto Rico.  Ortho is a subsidiary of Johnson & Johnson.   At all times relevant hereto, Defendant Ortho manufactures, and continues to manufacture Xarelto®.  At all times relevant herein, Defendant Ortho derived, and continues to derive substantial revenue from goods and products developed, marketed, sold, distributed and disseminated and used in the state of Florida.

11.     Defendant, JANSSEN PHARMACEUTICALS, INC. f/k/a JANSSEN PHARMACEUTICALS INC., f/k/a ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. ("Janssen"), at all relevant times at the time suit was commenced, a Pennsylvania corporation with a principal place of business at 1125 Trenton-Harbourton Road, Titusville, New Jersey 08560. At all times relevant and material hereto, Janssen was, and still is, a PHARMACEUTICALS company involved in the manufacturing, research, development, marketing, distribution, sale, and release for use to the general public of PHARMACEUTICALS, including Xarelto®.

12.     Defendant BAYER CORPORATION ("Bayer Corp") is, and at all times relevant was and remains, an Indiana corporation with its nerve center, headquarters and principal place of business at 100 Bayer Road Pittsburgh, Pennsylvania. Bayer Corp. transacts substantial business including the research, manufacture, sale, distribution and marketing of Xarelto® within the state of California and throughout the United States, as set forth herein.

13.     Defendant, BAYER AG ("Bayer") is a foreign company with its principal place of business in Leverkusen, Germany, which licensed Xarelto®.

14.     Defendant, BAYER HEALTHCARE LLC ("Bayer HC") is a Delaware limited

5

**COMPLAINT FOR WRONGFUL DEATH**

Pollard ● Bailey

liability company with its principal places of business located at 100 Bayer Road, Pittsburgh, Pennsylvania 15205 and 100 Global View Drive, Warrendale, Pennsylvania. Bayer HC's sole member is Defendant Bayer Corporation.

15.    Bayer HC is a subsidiary of Bayer and jointly developed Xarelto® with J&J and Janssen R&D.  Bayer HC transacts substantial business including the research, manufacture, sale, distribution and marketing of Xarelto® within the state of Florida and throughout the United States, as set forth herein.

16.    Bayer Healthcare PHARMACEUTICALS, Inc. ("Bayer Pharma") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Montville, New Jersey.  Bayer Pharma is the U.S.-based PHARMACEUTICALS operation of Bayer HC, a division of Bayer.  Bayer Pharma is a subsidiary of Bayer and jointly developed, marketed and distributed Xarelto® with J&J and Janssen R&D.  At all times relevant and material herein, Bayer Pharma was, and still is, a PHARMACEUTICALS company involved in the manufacturing, distributing, sale and release for use to the general public of PHARMACEUTICALS, including Xarelto®.

17.    Bayer's cooperation partner, J&J and Janssen R&D, submitted the new drug application for Xarelto® to the FDA.

18.    Defendants Janssen R&D, J&J, Ortho, Janssen, Bayer, Bayer Corp., Bayer HC, and Bayer Pharma shall be referred herein individually by name or jointly as "Defendants."

19.    At all times alleged herein, Defendants shall include any and all named or unnamed parent companies, parent corporations, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and any organizational units of any kind, their predecessors, successors, successors in interest, assignees, and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

20.    At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessor in interest, aider and abettor, co-conspirator, and joint venturer of each of the remaining Defendants herein.

6

**COMPLAINT FOR WRONGFUL DEATH**

Pollard • Bailey

21.     At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessor in interest, aider and abettor, co-conspirator, and joint venturer of each of the remaining Defendants thereby operating and acting with the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture.

22.     At all times relevant and material hereto, Defendants were engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and or introducing into interstate commerce throughout the United States, and in the State of California, either directly or indirectly, through third-parties, subsidiaries and/or related entities, the anti-coagulant PHARMACEUTICALS Xarelto®.

## JURISDICTION AND VENUE

23.     The Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) inasmuch as the amount in controversy exceeds $75,000.00 and the Plaintiffs herein are citizens of different states than the Defendants.

24.     Venue in this district for pretrial proceedings in this civil action is proper under 28 U.S.C. § 1391, inasmuch as a substantial part of the events or omissions giving rise to the claim occurred in this District—the Northern District of California.

25.     This is a potential tag-along Action and in accordance with 28 U.S.C. §1407, it should be transferred to the United States District Court for the Eastern District of Louisiana in New Orleans, LA: In Re Xarelto (Rivaroxaban) Liability Litigation, MDL 2592 (Hon. Eldon E. Fallon).

## NATURE OF THE CASE

26.     Defendants, directly or by and through their agents, apparent agents, servants or employees designed, manufactured, marketed, advertised, distributed, promoted, labeled, tested and sold Xarelto® as an anti-coagulant primarily used to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat deep vein thrombosis ("DVT"), to treat pulmonary embolisms ("PE"), and/or to reduce the risk of recurrence of DVT and/or PE.

**COMPLAINT FOR WRONGFUL DEATH**

Pollard ▪ Bailey

27.     Defendants applied for an initial NDA for Xarelto® in July of 2008.

28.     Xarelto® was approved by the Food and Drug Administration ("FDA") on July 1, 2011 to reduce the risk of blood clots, DVT, and PE following knee and hip replacement surgery. On November 4, 2011 Xarelto® was approved as an anti-coagulant primarily used to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation. On November 2, 2012 the FDA expanded the use of Xarelto® to the treatment of patients with DVT and PE, as well as long-term treatment to prevent recurrence of the same.

29.     According to the Defendants' marketing and informational materials, referenced in the paragraphs below, and widely disseminated to the consuming public, "Xarelto® is the first and only once-a-day prescription blood thinner for patients with AFib not caused by a heart valve problem, that is proven to reduce the risk of stroke -- without routine blood monitoring."[1]

30.     As the Defendants state on their website, "XARELTO® has been proven to lower the chance of having a stroke if you have atrial fibrillation (AFib ), not caused by a heart valve problem.  XARELTO® is an anticoagulant, or blood-thinning medicine that works by helping to keep blood clots from forming."  The Defendants further claim that "it's been prescribed to more than seven million people around the world to help treat or reduce their risk of dangerous clots" and that it "begins working a few hours after you start taking it, and keeps working for as long as you take it."[2]

31.     Defendants further declare that "XARELTO® is proven to help treat and prevent DVT and PE blood clots" and that Xarelto® "reduc[es] the risk of these dangerous clots [from] happening again."[3]

32.     Defendants claim that patients with AFib, DVT, or PE taking Xarelto® do not need regular blood monitoring and there are no known dietary restrictions.  In addition, patients

---

[1] http://www.fda.gov/downloads/Drugs/GuidanceComplianceRegulatoryInformation/EnforcementActivitiesbyFDA/WarningLettersandNoticeofViolationLetterstoPharmaceuticalCompanies/UCM357833

[2] http://www.xarelto-us.com/how-xarelto-works

[3] http://www.xarelto-us.com/dvt-pe/treatment-of-dvt-pe

**COMPLAINT FOR WRONGFUL DEATH**

Pollard ● Bailey

with AFib only need to take Xarelto® once a day with an evening meal.[4]

33.   Defendants claim that patients with AFib are 5 times more likely than a person without Afib to suffer from a stroke and that "disability is more likely to be severe" and "the outcome is almost twice as likely to be fatal" and "the chances of having another major stroke go up."[5]

34.   Rivaroxaban is an oxazolidinone derivative optimized for inhibiting both free Factor Xa and Factor Xa bound in the prothrombinase complex.   It is a highly selective direct Factor Xa inhibitor with oral bioavailability and rapid onset of action.   Inhibition of Factor Xa interrupts the intrinsic and extrinsic pathway of the blood coagulation cascade, inhibiting both thrombin formation and development of thrombi.   Rivaroxaban does not inhibit thrombin (activated Factor II).

35.   Defendants routinely marketed Xarelto® as a "one size fits all" drug. In their fervent marketing of Xarelto, Defendants' misinformed patients and their healthcare providers as to the necessity to routinely monitor any patient requiring a blood thinning agent.   In essence, the Defendants have created a new drug, Xarelto®, that is not better than Warfarin from a safety perspective, and at best, is only perhaps slightly easier to use and administer.   The idea of this apparently "easier-to-use" anticoagulant evidently appealed to physicians, who were subject to extreme marketing and promotion by the Defendants, but ignored and continues to ignore patient safety.

36.   The Defendants' marketing materials suggest that Xarelto® represented a therapeutic simplification and therapeutic progress because it did not require patients to undergo periodic monitoring with blood tests and because there were no dietary restrictions.

37.   Defendants' boxed warning did not address the increased risk for serious and fatal bleeding, despite the fact that the information listed on their website originating from the

---

[4] http://www.xarelto-us.com/dvt-pe/xarelto-difference# and http://www.xarelto-us.com/how-xarelto-is-different

[5] http://www.xarelto-us.com/knowing-your-stroke-risk

**COMPLAINT FOR WRONGFUL DEATH**

Pollard ● Bailey

Rocket AF clinical trial sponsored by Defendants, states that in comparison to Warfarin, patients taking Xarelto® have more gastrointestinal bleeds and need more transfusions.  In spite of this reference regarding bleeds, the information is still wholly inadequate because, this information was not conveyed in the boxed warning on the Xarelto® label.[6]

38.     According to Institute for Safe Medication Practices, QuarterWatch Report, issued on October 3, 2012, the primary reported adverse event related to Xarelto® use "was not the well-understood risk of hemorrhage.  Instead, the largest identifiable category was serious blood-clot- related injury--most frequently pulmonary embolism--the very events Rivaroxaban is intended to prevent."  This lack of efficacy for short term users of Xarelto® post hip and knee replacement surgery resulted in about 44% of the reported adverse effects from taking Xarelto®.

39.     FDA clinical reviewers have stated that "rivaroxaban should not be approved unless the manufacturer conducts further studies to support the efficacy and safety of rivaroxaban" and the FDA website notes that "[a]dverse event reports of thrombocytopenia and venous thromboembolic events were identified" in relationship to Xarelto®".[7]  However, this information was not portrayed in the warning section on the warning label.  The lack of efficacy of the medication for patients taking Xarelto® post hip and knee surgery were not disclosed resulting in patients ingesting Xarelto® and physicians prescribing Xarelto® without sufficient information to make an accurate decision.

40.     Defendants fervently marketed Xarelto® using print advertisements, online marketing on their website, and video advertisements with no regard to the accuracy and repercussions of their misleading advertising in favor of increasing sales.

41.     In the January/February 2013 issue of WebMD magazine, Defendants placed a print advertisement that resulted in the Office of Prescription Drug Promotion (OPDP) of the

---

[6] http://www.xareltohcp.com/reducing-stroke-risk/safety.html

[7] http://www.fda.gov/drugs/guidancecomplianceregulatoryinformation/surveillance/ucm204091.htm

**COMPLAINT FOR WRONGFUL DEATH**

Pollard ● Bailey

U.S. Food and Drug Administration (FDA) sending a letter stating that their print advertisement was "false or misleading because it minimizes the risks associated with Xarelto® and makes a misleading claim." Furthermore, the advertisement states "And there are no dosage adjustments" which is in conflict with the product labeling approved by the FDA.[8]

42. As a result of Defendants' intense marketing, "[a]bout 130,000 U.S. prescriptions were written for Xarelto® in the first three months of 2012" resulting in large profits as Xarelto® costs approximately $3,000 a year versus $200 for generic Warfarin.[9]

43. As a result of Defendants' extreme marketing tactics, within the United Kingdom, Defendants also made 219 million Euros in sales from Xarelto®, more than three times as much as during the same period last year.[10]

44. Due to the defective nature of Xarelto®, persons who were prescribed and ingested Xarelto®, for even a brief period of time, including the Decedent herein, were at increased risk for developing life-threatening bleeds. Due to the flawed formulation of Xarelto®, which according to Defendants does not require regular blood monitoring or frequent doctor follow-up, raises concerns about the risk of stroke, bleeding, and blood clots if not taken properly or absorbed properly, particularly in patients with poor renal function. In addition, "[p]rominent U.S. [cardiologists and health care professionals] stress that neither new drug [Xarelto] has a known antidote for a bleeding emergency, as Warfarin does."[11]

45. Defendants' PHARMACEUTICALS Xarelto® led to 968 suspected undesirable side-effects including 72 cases of death in Germany in just the first eight months of 2013.[12]

---

[8] http://www.fda.gov/downloads/Drugs/GuidanceComplianceRegulatoryInformation/EnforcementActivitiesbyFDA/WarningLettersandNoticeofViolationLetterstoPharmaceuticalCompanies/UCM357833, June 6, 2013 FDA Warning Letter

[9] http://www.huffingtonpost.com/2012/06/14/pradaxa-xarelto-blood-thinner-doctors-heart_n_1595971.html

[10] Frank Siebelt, Hans Seidenstuecker, and Christoph Steitz. "Reports of side-effects from Bayer's Xarelto grow: Spiegel" http://www.reuters.com/article/2013/09/08/us-bayer-xarelto-idUSBRE9870AH20130908

[11] http://www.huffingtonpost.com/2012/06/14/pradaxa-xarelto-blood-thinner-doctors-heart_n_1595971.html

[12] Frank Siebelt, Hans Seidenstuecker, and Christoph Steitz. "Reports of side-effects from Bayer's Xarelto grow: Spiegel" http://www.reuters.com/article/2013/09/08/us-bayer-xarelto-idUSBRE9870AH20130908

Pollard ● Bailey

46.    In addition, The Institute for Safe Medication Practices reported that:

"A clinical trial with 14,000 patients had shown that rivaroxaban was no worse than warfarin. [40] But reviewers noted that warfarin had not been optimally used. If rivaroxaban were really inferior to optimally used warfarin--but this was not proven, only suspected--its use could lead to increased death and injury. [41] Reviewers also questioned the convenient once-a-day dosing scheme, saying blood level studies had shown peaks and troughs that could be eliminated by twice-a-day dosing.  . . . As with other anticoagulants, the rate of clinically relevant bleeding in clinical studies was high--15% per year of treatment."[13]

47.    Even more significantly, in the first quarter of 2012, The Institute for Safe Medication Practices "identified 356 reports of serious, disabling, or fatal injury in which rivaroxaban was the primary suspect drug.  The report more than doubled from the previous quarter total of 128 cases."[14] However, when the findings were discussed with Defendants, "the company told us that it had reviewed the same data and saw no signal of a safety issue that needed to be addressed."[15]  Defendants placed more value into ensuring that their profits would continue instead of working on minimizing the serious, disabling, or fatal injuries that were occurring due to the drug they were marketing and promoting.

48.    Defendants concealed their knowledge that Xarelto® can cause life threatening, irreversible bleeds from the Decedent, other consumers, the general public, and the medical community.  The Defendants did not adequately warn of the irreversible nature of Xarelto®. Specifically, Defendants did not adequately inform consumers and the prescribing medical community about the risks of uncontrollable bleeds associated with Xarelto® usage, nor did Defendants warn or otherwise advise on how to intervene and stabilize a patient should a bleed occur.

---

[13] Institute for Safe Medication Practices, QuarterWatch Report, October 3, 2012

[14] *Id.*

[15] *Id.*

**COMPLAINT FOR WRONGFUL DEATH**

Pollard ● Bailey

49.     Moreover, Defendants failed to adequately warn about the lack of an antidote to reverse uncontrolled bleeding caused by Xarelto®.   Defendants merely indicated that there was a risk for bleeding and side-stepped the important issue of reversing the effects of Xarelto® should a bleed occur.  Other safer alternatives to Xarelto® have an antidote that can reverse uncontrolled bleeding.[16]

50.     Importantly, Xarelto® still does not have a "black box" warning informing patients or prescribing doctors that Xarelto® can cause irreversible bleeds.  In fact, a label change as recent as March 2014 still fails to contain a "black box" warning regarding irreversible bleeds.

51.     Aside from the warning labels, Defendants did not issue a "Dear Doctor" letter that sufficiently outlined the dangers of administering Xarelto® to a patient.  In the September 2013 letter to healthcare professionals, Defendants do not mention the lack of an antidote in Xarelto® should serious and fatal bleeding occur while a patient was taking Xarelto®.

52.     The current warning is simply inadequate. The Defendants have failed and continue to fail in their duties to warn and protect the consuming public, including the Decedent.

53.     In addition to damages for the Defendants' inadequate warnings, Xarelto® also lacks any benefit sufficient to tolerate the extreme risk posed by the ingestion of this drug.

54.     Xarelto® is unreasonably dangerous and defective as formulated putting consumers, including Decedent, at an unreasonable risk of suffering needless injuries and death.

55.     Defendants willfully, wantonly and with malice withheld the knowledge of increased risk of irreversible bleeds in users of Xarelto® to prevent any chances of their product's registrations being delayed or rejected by FDA.

56.     As the manufacturers and distributors of Xarelto®, Defendants knew or should have known that Xarelto® use was associated with irreversible bleeds.

---

[16] http://www.accessdata.fda.gov/drugsatfda_docs/label/2014/022406s009lbl.pdf

**COMPLAINT FOR WRONGFUL DEATH**

Pollard ● Bailey

57.     With the knowledge of the true relationship between use of Xarelto® and irreversible bleeds, rather than taking steps to pull the drug off the market, provide strong warnings, or create an antidote, Defendants promoted and continue to promote Xarelto® as a safe and effective treatment for AFib.

58.     According to the World Preview report, Defendants' "Xarelto® ... is estimated to be the 19th-best-selling drug in the world by 2018" and "Worldwide sales of Xarelto® are expected to jump from $596 million in 2012 to $3.7 billion in 2018."[17]

59.     While Defendants enjoy great financial success from their expected blockbuster drug, Xarelto®, they continue to place American citizens at risk of severe bleeds and death.

60.     Consumers, including Plaintiffs herein who have used Xarelto® to reduce the risk of stroke due to Afib or to reduce the risk of blood clots, particularly DVT and PE, following knee or hip replacement surgery, have and had several alternative safer products available to treat the conditions and have not been adequately warned about the significant risks and lack of benefits associated with Xarelto® therapy.

61.     Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiff's physicians the true and significant risks associated with Xarelto® use.

62.     As a result of Defendants' actions, Plaintiffs 'physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiffs would be exposed to the risks identified in this Complaint.  The increased risks and subsequent medical damages associated with Plaintiff's Xarelto® use were the direct and proximate result of Defendants' conduct.

## FACTUAL ALLEGATIONS

63.     On or around October 2013, Decedent Grace Sellers was first prescribed and began

---

[17] http://www.drugwatch.com/2013/07/23/blood-thinner-growth-more-risk/

**COMPLAINT FOR WRONGFUL DEATH**

Pollard ● Bailey

taking Xarelto® upon direction of her physician for atrial fibrillation and/or prevention of potentially dangerous blood clots.  Subsequently, as a direct result of Decedent Sellers' ingestion of Xarelto®, decedent Sellers suffered a stroke and died on January 5, 2015. As a proximate result of Defendants' acts and omissions, Decedent suffered the injuries and death described hereinabove due to Decedent's ingestion of Xarelto®.  Plaintiff Richard Sellers accordingly seeks damages associated with these injuries and death. Decedent Sellers would not have used Xarelto® had Defendants properly disclosed the risks associated with its use, as safer alternatives without the aforesaid risks were available.

64.     On or around August 2013, Decedent Terry Benge was first prescribed and began taking Xarelto® upon direction of his physician for atrial fibrillation and/or the prevention of potentially dangerous blood clots.  Subsequently, as a direct result of Decedent Sellers' ingestion of Xarelto®, decedent Sellers suffered heart failure and died on December 28, 2013. As a proximate result of Defendants' acts and omissions, Decedent suffered the injuries and death described hereinabove due to Decedent's ingestion of Xarelto®. Plaintiff Maria Benge accordingly seeks damages associated with these injuries and death. Decedent Benge would not have used Xarelto® had Defendants properly disclosed the risks associated with its use, as safer alternatives without the aforesaid risks were available.

65.     On or around November 2014, Decedent Dale Farris was first prescribed and began taking Xarelto® upon direction of his physician for atrial fibrillation and/or the prevention of potentially dangerous blood clots.  Subsequently, as a direct result of Decedent Farris' ingestion of Xarelto®, decedent Farris suffered uncontrollable gastrointestinal bleeding and died on December 21, 2014. As a proximate result of Defendants' acts and omissions, Decedent suffered the injuries and death described hereinabove due to Decedent's ingestion of Xarelto®.  Plaintiff Linda Farris accordingly seeks damages associated with these injuries and death. Decedent Farris would not have used Xarelto® had Defendants properly

**COMPLAINT FOR WRONGFUL DEATH**

disclosed the risks associated with its use, as safer alternatives without the aforesaid risks were available.

66.     On or around March 2013, Decedent Walter G. McDougal Jr. was first prescribed and began taking Xarelto® upon direction of his physician for atrial fibrillation and/or the prevention of potentially dangerous blood clots. Subsequently, as a direct result of Decedent McDougal's ingestion of Xarelto®, decedent McDougal suffered a stroke and died on March 29, 2013. As a proximate result of Defendants' acts and omissions, Decedent suffered the injuries and death described hereinabove due to Decedent's ingestion of Xarelto®.   Plaintiff Lisa McDougal accordingly seeks damages associated with these injuries and death. Decedent McDougal would not have used Xarelto® had Defendants properly disclosed the risks associated with its use, as safer alternatives without the aforesaid risks were available.

67.     In 2013, Decedent Reynaldo Trujillo was first prescribed and began taking Xarelto® upon direction of his physician for atrial fibrillation and/or the prevention of potentially dangerous blood clots.  Subsequently, as a direct result of Decedent Trujillo's ingestion of Xarelto®, decedent Trujillo suffered uncontrollable internal bleeding and died on April 5, 2014. As a proximate result of Defendants' acts and omissions, Decedent suffered the injuries and death described hereinabove due to Decedent's ingestion of Xarelto®. Plaintiffs Irene Trujillo, Reynaldo Trujillo, Jr., Jose Trujillo, Jessica Trujillo, Francisca Trujillo, and Rafael Trujillo accordingly seek damages associated with these injuries and death. Decedent Trujillo would not have used Xarelto® had Defendants properly disclosed the risks associated with its use, as safer alternatives without the aforesaid risks were available.

68.     On or around July 2014, Decedent Richard Wolff was first prescribed and began taking Xarelto® upon direction of heis physician for atrial fibrillation and/or the prevention of potentially dangerous blood clots. Subsequently, as a direct result of Decedent Wolff's ingestion of Xarelto®, decedent Wolff suffered uncontrollable internal bleeding and died

**COMPLAINT FOR WRONGFUL DEATH**

Pollard ● Bailey

on January 25, 2015. As a proximate result of Defendants' acts and omissions, Decedent suffered the injuries and death described hereinabove due to Decedent's ingestion of Xarelto®. Plaintiffs Charles Wolff, Donald Wolff, Anna Poling and Geraldine Dendinger, accordingly seek damages associated with these injuries and death. Decedent Trujillo would not have used Xarelto® had Defendants properly disclosed the risks associated with its use, as safer alternatives without the aforesaid risks were available.

**EQUITABLE TOLLING OF APPLICABLE STATUTES OF LIMITATION**

69.     Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein.

70.     The running of any statute of limitations has been tolled by reason of Defendants' fraudulent concealment. Defendants, through failing to disclose, for three years, the truth about the safety and efficacy of Xarelto®, to Plaintiffs decedents' physicians, and misrepresenting Xarelto® as safe and efficacious for its intended use, actively concealed from said individuals the true risks associated with the use of Xarelto® drug products.

71.     Plaintiffs and plaintiffs' decedents had no knowledge that Defendants were engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment of wrongdoing by the Defendants, the Plaintiffs and their decedents could not have reasonably discovered the wrongdoing at anytime prior to the commencement of this Action.

72.     None of the decedents nor decedents' physicians, could have possibly determined the nature, extent and identity of related health risks associated with Xarelto®. Decedents and decedents' physicians reasonably relied on Defendants to disseminate truthful and accurate safety and efficacy information about its drug and warn of the side effects complained of herein.

73.     Furthermore, Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the defective nature of Xarelto®. Defendants were under a duty to disclose the true character, quality, and nature of Xarelto® because this was nonpublic information over which the Defendants have, and continue to have, exclusive control,

Pollard • Bailey

1  and because Defendants knew this information was not available to the decedents herein or their

2  physicians. In addition, the Defendants are estopped from relying on any statute of limitations

3  because of their concealment of these facts.

4         WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory

5  and punitive damages, together with interest, costs of suit, attorneys' fees, and all such

6  other relief as the Court deems proper.

7  **COUNT I**

8  **STRICT PRODUCTS LIABILITY- FAILURE TO WARN**

9         Comes now Plaintiffs and for Count I of this Complaint alleges:

10         74. Plaintiffs incorporate by reference each and every paragraph of this Complaint as

11  if fully set forth herein.

12         75. Defendants owed a duty of reasonable care to adequately warn of the risks

13  associated with the use of Xarelto® to Plaintiffs' decedents and the general public.

14         76. Defendants knew or reasonably should have known that the warnings provided

15  to users of Xarelto® regarding the risks associated with its use were incorrect and misleading in

16  at least the following material respects:

17         a. Xarelto® was unaccompanied by proper warnings regarding all possible side

18         effects associated with its use and the comparative severity, incidence, and duration of

19         such adverse effects; and

20         b. Xarelto® was defective due to inadequate post-marketing warnings or

21         instructions, because Defendants failed to provide adequate warnings to users or

22         consumers and continued aggressively to promote Xarelto®, even after it knew or

23         should have known of the risks of injury from this drug; and

24         c. Xarelto® was unaccompanied by proper warnings regarding irreversible

25         bleeding caused by Xarelto® and Defendants continued to aggressively promote

26         Xarelto®, even after it knew of should have known of the risk of irreversible bleeding

27         from this drug; and

**COMPLAINT FOR WRONGFUL DEATH**

Pollard ▪ Bailey

d.     Defendants failed to warn that there were other drugs available that did not have the same risks as Xarelto®.

77.     By failing to warn Plaintiffs' decedents and these decedents' physicians of the adverse health risks associated with Xarelto®, Defendants breached their duty to Plaintiffs' decedents of reasonable care and safety.

78.     Defendants, as manufacturers and distributers of PHARMACEUTICALS drugs, are held to the level of knowledge of an expert in the field; and further, Defendants knew or should have known that warnings and other clinically relevant information and data which they distributed regarding the risks of irreversible bleeds and other injuries and death associated with the use of Xarelto® were inadequate.

79.     Plaintiffs' decedents did not have the same knowledge as Defendants and no adequate warning or other clinically relevant information and data was communicated to Plaintiffs' decedents or to their treating physicians.

80.     Defendants had a continuing duty to provide consumers, including Plaintiffs' decedents and their physicians, with warnings and other clinically relevant information and data regarding the risks and dangers associated with Xarelto®, as it became or could have become available to Defendants.

81.     Defendants marketed, promoted, distributed and sold an unreasonably dangerous and defective prescription drug, Xarelto®, to health care providers empowered to prescribe and dispense Xarelto® to consumers, including Plaintiffs' decedents herein, and each of them without adequate warnings and other clinically relevant information and data.  Through both omission and affirmative misstatements, Defendants misled the medical community about the risk and benefit balance of Xarelto®, which resulted in injury and death to Plaintiffs' decedents.

82.     Despite the fact that Defendants knew or should have known that Xarelto® caused unreasonable and dangerous side effects, they continued to promote and market Xarelto® without stating that there existed safer and more or equally effective alternative drug products and/or providing adequate clinically relevant information and data.

83.    Defendants knew or should have known that consumers, including Plaintiffs' decedents herein specifically, would foreseeably and needlessly suffer injury as a result of Defendants' failures.

84.    Defendants failed to provide timely and adequate warnings to physicians, pharmacies, and consumers, including Plaintiffs' decedents, and to their intermediary physicians, in the following ways:

a.    Defendants failed to include adequate warnings and/or provide adequate clinically relevant information and data that would alert Plaintiffs' decedents and their physicians to the dangerous risks of Xarelto® including, among other things, irreversible bleeds;

b.    Defendants failed to provide adequate post-marketing warnings and instructions after the Defendants knew or should have known of the significant risks of, among other things, irreversible bleeds;

c.    Defendants continued to aggressively promote and sell Xarelto®, even after they knew or should have known of the unreasonable risks of irreversible bleeds from this drug.

85.    Defendants had an obligation to provide Plaintiffs' decedents their physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with exposure to Xarelto®, and/or that there existed safer and more or equally effective alternative drug products.

86.    By failing to provide Plaintiffs' decedents and their physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with exposure to Xarelto®, and/or that there existed safer and more or equally effective alternative drug products, Defendants breached their duty of reasonable care and safety.

87.    Defendants' actions described above were performed willfully, intentionally, and with reckless disregard of the life and safety of the Plaintiffs' decedents and the general public.

**COMPLAINT FOR WRONGFUL DEATH**

88.     Defendants' failure to exercise reasonable care in the design, dosing information, marketing, warnings, and/or manufacturing of Xarelto® was a proximate cause of Plaintiffs' decedents' injuries and deaths.

89.     Plaintiffs seeks all damages to which they may be justly entitled.

90.     As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Plaintiffs' decedents were exposed to Xarelto® and suffered the injuries, damages and death set forth hereinabove.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT II

## STRICT PRODUCTS LIABILITY – DESIGN DEFECT

Comes now Plaintiffs and for Count II of this Complaint alleges:

91.     Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

92.     At all times material to this lawsuit, Defendants were engaged in the business of designing, manufacturing, testing, marketing, distributing and selling Xarelto® for the sale to, and use by, members of the public. The Xarelto® manufactured by Defendants reached Plaintiffs without substantial change and was ingested as directed. The Xarelto® was defective and unreasonably dangerous when it entered into the stream of commerce and when used by Plaintiffs.

93.     Defendants sold the Xarelto® which was ingested by Plaintiffs' decedents, and each of them.

94.     Defendants owed a duty to the general public, and specifically to the Plaintiffs' decedents, to exercise reasonable care in the design, study, development, manufacture, promotion, sale, marketing and distribution of their prescription medications, including the Xarelto® at issue in this lawsuit. Defendants failed to exercise reasonable care in the design of

Pollard • Bailey

Xarelto® because as designed, Xarelto was capable of causing serious personal injuries such as those suffered by Plaintiffs' decedents during foreseeable use. Defendants also failed to exercise reasonable care in the marketing of Xarelto® because they failed to warn, that as designed, Xarelto® was capable of causing serious personal injuries such as those suffered by Plaintiffs' decedents during foreseeable use.

95.     Xarelto® was defective due to inadequate post-marketing warnings and instruction because Defendants knew or should have known of the risk and danger of serious bodily harm and or death from the use of Xarelto®, but failed to provide an adequate warning to patients and prescribing physicians of the product, knowing the product could cause serious injury and or death.

96.     The Xarelto® ingested by Plaintiffs' decedents was defective and, because of its defects, was unreasonably dangerous to persons who might reasonably be expected to require its use. In addition, this drug was dangerous to the extent beyond that which could reasonably be contemplated by Plaintiffs' decedents. Any benefit of Xarelto® was far outweighed by the serious and undisclosed risks of its use, and other drugs performed the same function without the increased risks of Xarelto®.

97.     The Xarelto® ingested by Plaintiffs' decedents was defective at the time it was distributed by the Defendants or left their control.

98.     Plaintiffs' decedents were persons who would reasonably be expected to use Xarelto®.

99.     Defendants' failure to exercise reasonable care in the design, dosing information, marketing, warnings, and/or manufacturing of Xarelto® was a proximate cause of Plaintiffs' decedents' injuries and deaths.

100.     Plaintiffs seek all damages to which they may be justly entitled.

101.     As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Plaintiffs' decedents were exposed to Xarelto® and suffered the injuries and damages set forth hereinabove.

**COMPLAINT FOR WRONGFUL DEATH**

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT III

## NEGLIGENCE

Comes now Plaintiffs and for Count III of this Complaint alleges:

102.    Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein.

103.    At all times relevant and material hereto, Defendants owed a duty to Plaintiffs' decedents of reasonable care and safety.

104.    Defendants owed a duty to the general public, and specifically to the Plaintiffs' decedents delineated herein, to not introduce a drug into the market, or continue a previous tender of a drug, including the Xarelto® at issue in this lawsuit, that was unreasonably dangerous for any person to use it and was capable of causing serious personal injuries such as those suffered by Plaintiffs' decedents during foreseeable use.

105.    Defendants' duties included, but were not limited to, carefully and properly designing, testing, manufacturing, licensing, packaging, promoting, advertising, selling, and/or distributing Xarelto® into the stream of commerce, and providing warnings with regard to this drug.

106.    Defendants breached their duty of care and were negligent by, but not limited to, the following actions, misrepresentations, and omissions toward Plaintiffs' decedents:

a.      Failing to exercise reasonable and ordinary care in that the drug Xarelto® was so unreasonably dangerous and defective in design that it never should have been on the market or taken by anyone;

b.      Failing to exercise reasonable and ordinary care in the design, research, development, manufacture, sale, testing and or distribution of the drug Xarelto®.

c.      Tendering into the market a drug which Defendants knew or should have known

**COMPLAINT FOR WRONGFUL DEATH**

Pollard ▪ Bailey

was so dangerous that it shouldn't have been taken by anyone.

d.    Violating its duty of care in design by tendering into the market a drug which it knew or should have known should not have been taken by anyone.

e.     Violating its duty of care in design in marketing by tendering into the market a drug which it knew or should have known should not have been taken by anyone.

f.    Violating its duty of care in design by placing an unsuitable product into the market for public consumption.

g.    Failing to use ordinary care in designing, testing, and manufacturing Xarelto® so as to avoid the high risk to users of unreasonable, dangerous side-effects, some of which are fatal;

h.    Failing to accompany Xarelto® with adequate warnings that would alert doctors, consumers, and other users to the potential adverse side effects associated with the use of this drug and the nature, severity and duration of such adverse effects;

i.    Failing to conduct adequate pre-clinical testing and post-marketing surveillance to determine the safety and side effects of Xarelto®;

j.    Defendants were otherwise careless or negligent.

107.    The Xarelto® that injured and ultimately killed Plaintiffs' decedents was in substantially the same condition when Plaintiffs' decedents ingested it as it was in when it left the control of Defendants.  Xarelto®'s ability to cause serious personal injuries and damages such as those suffered by Plaintiffs' decedents was not due to any voluntary action or contributory negligence of Plaintiffs' decedents.  Plaintiffs' decedents consumed the Xarelto® as directed and without change in its form or substance.

108.    Although Defendants knew or should have known that Xarelto® caused unreasonably dangerous side effects which many users would be unable to remedy by any means, Defendants continued to market this drug to doctors when there were safer and less expensive alternatives available.

109.    In addition, Defendants had a legal duty to comply with the U.S. Food, Drug and

**COMPLAINT FOR WRONGFUL DEATH**

Cosmetic Act, U.S. Code § 21 USC §301, et seq., and. regulations promulgated thereunder.

110.    Defendants negligently and carelessly violated the laws and regulations of the United States including, but not limited to the following: 21 CFR §330.10(a)(4)(v) (Labeling); 21 CFR § 369.10 (Labeling); 21 CFR §§ 201.56 and 201.57 (d), (e) and (f) (Labeling); 21 CFR 1.21 (a) (Labeling); 21 CFR 600.80 (Post-marketing Reporting of Adverse Experiences); 21 CFR §314. 50 (Post Marketing Reports of Adverse Drug Experiences), as well as regulations relating to the promotion of drugs for unlabeled uses. The violations of those and other statutes and regulations constitute negligence per se.

111.    Defendants owed a duty to the general public, and specifically to the Plaintiffs' decedents to exercise reasonable care in the design, study, development, manufacture, promotion; sale, marketing and distribution of their prescription medications, including the Xarelto® at issue in this lawsuit. Defendants failed to exercise reasonable care in the design of Xarelto® because as designed, Xarelto was capable of causing serious personal injuries and ultimately death such as those suffered by Plaintiffs' decedents during foreseeable use. Defendants also failed to exercise reasonable care in the marketing of Xarelto® because they failed to warn, that as designed, Xarelto® was capable of causing serious personal injuries such as those suffered by Decedent during foreseeable use.

112.    Defendants breached their duty and were negligent in, but not limited to, the following actions, misrepresentations, and omissions toward Plaintiffs' decedents:

a.    Failing to use due care in developing, testing, designing, and manufacturing Xarelto® so as to avoid the aforementioned risks to individuals when Xarelto® was being used for treatment;

b.    Failing to accompany their product with proper or adequate warnings, or labeling regarding adverse side effects and health risks associated with the use of Xarelto® and the comparative severity and duration of such adverse effects;

c.    In disseminating information to Plaintiffs' decedents and their physicians that was negligently and materially inaccurate, misleading, false, and unreasonably

**COMPLAINT FOR WRONGFUL DEATH**

Pollard ▪ Bailey

1  dangerous to patients such as Plaintiffs' decedents;

2  d.      Failing to accompany their products with proper or adequate rate of incidence or

3  prevalence of irreversible bleeds;

4  e.      Failing to provide warnings or other information that accurately reflected the

5  symptoms, scope, and severity of the side effects and health risks;

6  f.      Failing to conduct adequate pre-clinical and clinical testing and post- marketing

7  surveillance to determine the safety of Xarelto®;

8  g.      Failing to warn Plaintiffs' decedents, the medical and healthcare community, and

9  consumers that the product's risk of harm was unreasonable and that there were safer and

10  effective alternative medications available to Plaintiffs' decedents and other consumers;

11  h.      Failing to provide adequate training or information to medical care providers for

12  appropriate use and handling of Xarelto® and patients taking Xarelto®;

13  i.      Failing to adequately test and/or warn about the use of Xarelto®, including,

14  without limitations, the possible adverse side effects and health risks caused by the use

15  of Xarelto®;

16  j.      Failing to design and/or manufacture a product that could be used safely due to

17  the lack of a known reversal agent or antidote;

18  k.      In designing, manufacturing, and placing into the stream of commerce a product

19  which was unreasonably dangerous for its reasonably foreseeable use, which Defendant

20  knew or should have known could cause injury  and death to Plaintiffs' decedents;

21  l.      Failing to remove Xarelto® from the market when Defendants' knew or should

22  have known of the likelihood of serious side effects and injury to its users;

23  m.      Failing to adequately warn users, consumers and physicians about the severity,

24  scope and likelihood of bleeds and related dangerous conditions to individuals taking

25  Xarelto®; and

26  n.      Representing to physicians, including but not limited to Plaintiffs' decedents

27  prescribing physicians, that this drug was safe and effective for use.

**COMPLAINT FOR WRONGFUL DEATH**

Pollard ● Bailey

113.    The Xarelto® that injured Plaintiffs' decedents was in substantially the same condition when Plaintiffs' decedents ingested it as it was in when it left the control of Defendants.  Defendants' Xarelto®'s ability to cause serious personal injuries and ultimately death, such as those suffered by Plaintiffs' decedents, was not due to any voluntary action or contributory negligence of Plaintiffs' decedents.  Plaintiffs' decedents consumed the Xarelto® as directed and without change in its form or substance.

114.    Defendants' failure to exercise reasonable care in the design, dosing information, marketing, warnings, and/or manufacturing of Xarelto® was a proximate cause of Plaintiffs' decedents injuries and ultimately, their deaths.

115.    As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Plaintiffs' decedents were exposed to Xarelto® and suffered the injuries and damages set forth hereinabove.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT IV

## NEGLIGENCE- FAILURE TO WARN

Comes now Plaintiffs and for Count IV of this Complaint alleges:

116.    Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein.

117.    Defendants owed a duty to warn of any dangerous defects or side effects; a duty to assure their product did not cause users unreasonable and dangerous risks, reactions, and side effects; and a duty to provide adequate post market surveillance and warnings as it learned of Xarelto®'s substantial dangers.

118.    Xarelto® was defective due to inadequate post-marketing warnings and instruction because Defendants knew or should have known of the risk and danger of serious bodily harm and or death from the use of Xarelto®, but failed to provide an adequate warning to

patients and prescribing physicians of the product, knowing the product could cause serious injury and or death.

119. Plaintiffs' decedents were prescribed and used Xarelto® for its intended purpose.

120. Plaintiffs' decedents could not have known about the dangers and hazards presented by Xarelto®.

121. The warnings that were given by the Defendants were not accurate, clear, complete, and/or were ambiguous.

122. The warnings, or lack thereof, that were given by the Defendants failed to properly warn prescribing physicians of the risk of irreversible bleeding and other serious injuries and side effects, and failed to instruct prescribing physicians to test and monitor for the presence of the injuries for which Plaintiffs' decedents and others had been placed at risk.

123. The warnings that were given by the Defendants failed to properly warn Plaintiffs' decedents and their prescribing physicians of the prevalence of irreversible bleeds and other risks to their health such as stroke and heart attack.

124. The Plaintiffs' decedents, individually and each of them through their prescribing physicians, reasonably relied upon the skill, superior knowledge, and judgment of the Defendants. The Defendants had a continuing duty to warn the Plaintiffs' decedents and their prescribing physicians of the dangers associated with Xarelto®. Had Plaintiffs' decedents received adequate warnings regarding the risks of Xarelto®, they would not have used Xarelto®.

125. Defendants breached their duty of reasonable care to Plaintiffs' decedents in the following material respects:

a. Xarelto® was unaccompanied by proper warnings regarding all possible side effects associated with its use and the comparative severity, incidence, and duration of such adverse effects; and

b. Xarelto® was defective due to inadequate post-marketing warnings or instructions, because Defendants failed to provide adequate warnings to users or

Pollard ● Bailey

consumers and continued aggressively to promote Xarelto®, even after Defendants knew or should have known of the risks of injury from this drug; and

c. Xarelto® was unaccompanied by proper warnings regarding irreversible bleeding caused by Xarelto® and Defendants continued to aggressively promote Xarelto®, even after Defendants knew or should have known of the risk of irreversible bleeding from this drug; and

d. Defendants failed to warn that there were other drugs available that did not have the same risks as Xarelto®.

126. Defendants knew or should have known that Xarelto® caused unreasonably dangerous risks and side effects of which the general public would not be aware. Defendants nevertheless advertised, marketed, and promoted their product knowing there were safer products on the market.

127. Defendants knew that Xarelto® was defective and unreasonably dangerous when it left the possession of the Defendants in that it contained warnings insufficient to alert patients and prescribing physicians of the dangerous risks and reactions associated with Xarelto®, including but not limited to the prevalence of irreversible bleeding, and other serious injuries and side effects despite the Defendant's knowledge of the increased risk of these injuries over other anticoagulation therapies available.

128. Defendants' failure to exercise reasonable care in the design, dosing information, marketing, warnings, and/or manufacturing of Xarelto® was a proximate cause of Plaintiffs' decedents' injuries and ultimate deaths.

129. Plaintiffs seeks all damages to which they may be justly entitled.

130. As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Plaintiffs' decedents were exposed to Xarelto® and suffered the injuries and damages set forth hereinabove.

131. For the above reasons, the Defendants are strictly liable under California's strict product liability laws without regard to proof of negligence or gross negligence.

**COMPLAINT FOR WRONGFUL DEATH**

Pollard • Bailey

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT V

## NEGLIGENCE- NEGLIGENT DESIGN

Comes now Plaintiffs and for Count V of this Complaint alleges:

132. Plaintiffs incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

133. Defendants designed, produced, manufactured and injected into the stream of commerce, in the regular course of its business, the PHARMACEUTICALS drug Xarelto®, which Defendants knew would be used by Plaintiffs' decedents and others.

134. At the time Xarelto® was manufactured and sold to Plaintiffs' decedents by Defendants, it was defective in design and unreasonably dangerous, subjecting users to risks of blood clots and irreversible bleeding which exceeded the benefits of the products, and for which other safer products were available.

135. Alternatively, when Xarelto® was manufactured and sold to Plaintiffs' decedents by Defendants, the product was defective in design and formulation, making use of the product more dangerous than other drugs for its intended use.

136. The Xarelto® sold to Plaintiffs' decedents reached each of them without substantial change. Plaintiffs' decedents were unaware of the dangerousness of the product until after its use. Plaintiffs' decedents ingested the Xarelto® without making any changes or alterations.

137. In designing and testing Xarelto®, the Defendants failed to exercise the ordinary care that a careful and prudent drug manufacturer would exercise in the same or similar circumstances.

138. As a direct and proximate result of the negligent design of Xarelto®, Plaintiffs have been damaged by and through the deaths of their decedents.

**COMPLAINT FOR WRONGFUL DEATH**

Pollard ▪ Bailey

139.  Defendants' conduct was done with conscious disregard for the safety of users of Xarelto®, including Plaintiffs' decedents, justifying an award of punitive damages.

140.  Plaintiffs seek all damages to which they may be justly entitled.

141.  As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Plaintiffs' decedents were exposed to Xarelto® and suffered the injuries and damages set forth hereinabove.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT VI

## NEGLIGENT MISREPRESENTATION

Comes now Plaintiffs and for Count VI of this Complaint alleges:

142.  Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein.

143.  Defendants knew, or should have known, that there were dangerous side effects resulting from the use of Xarelto®.

144.  Defendants knew or reasonably should have known that consumers such as Plaintiffs' decedents would not have known about the increased risk of irreversible bleeds, among other things, associated with Xarelto®.

145.  Defendants, armed with the knowledge stated in the preceding paragraphs, proceeded with the design, production, manufacture, promotion, advertising, and sale of Xarelto® without adequate warning of the side effects and dangerous risks to the consuming public, including Plaintiffs' decedents.

146.  Defendants negligently represented to Plaintiffs' decedents the safety and effectiveness of Xarelto® and concealed material information, including adverse information regarding the safety and effectiveness of Xarelto®. The misrepresentations and/or material omissions made by or perpetuated by Defendants are as follows:

a. Defendants failed to conduct sufficient testing which, if properly performed, would have shown that Xarelto® had serious side effects, and warn users of those risks; and/or

b. Include adequate warnings with Xarelto® that would alert users to the potential risks and serious side effects of Xarelto®, as well as the limited benefits and the approved uses; and/or

c. Warn Plaintiffs that use of Xarelto® carried a risk of death or permanent injury from irreversible bleeding, and other serious side effects; and/or

d. Advise the FDA, the health care industry, and the public about the adverse reports it had received regarding Xarelto®.

147. Defendants made the misrepresentations and omissions with the intent that Plaintiffs' decedents and the consuming public rely upon such information or the absence of such information in selection of Xarelto®.

148. Plaintiffs' decedents justifiably relied on and/or were induced by the misrepresentations and/or active concealment by Defendants and relied upon the absence of safety information, which Defendants suppressed, concealed, or failed to disclose, all to her detriment.

149. As a direct and proximate result of the dangerous and defective condition of Xarelto®, Plaintiffs' decedents were injured, died, and and incurred economic damages in the form of medical and funeral expenses.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT VII

## BREACH OF EXPRESS WARRANTY

150. Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows.

**COMPLAINT FOR WRONGFUL DEATH**

151. Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and/or otherwise released into the stream of commerce Xarelto®, in the course of same, directly advertised or marketed the product to the FDA, healthcare professionals and consumers, including Plaintiffs' decedents, or persons responsible for consumer.

152. Xarelto® materially failed to conform to those representations made by Defendants in package inserts, and otherwise, concerning the properties and effects of Xarelto®, respectively manufactured and/or distributed and sold by Defendants, and which Plaintiffs' decedents purchased and ingested in direct or indirect reliance upon these express representations. Such failures by Defendants constituted a material breach of express warranties made, directly or indirectly, to Plaintiffs' decedents concerning Xarelto® sold to Plaintiffs' decedents.

153. Defendants breached these express warranties in that Xarelto® was unsafe in light of the risk of life-threatening side effects associated with its use, including irreversible bleeds, strokes and death.

154. Plaintiffs' decedents relied to their detriment on Defendants' express warranties.

155. As a direct, foreseeable, and proximate result of Defendants' breaches of express warranties, Plaintiffs' decedents suffered grievous bodily injuries and ultimately death when their physicians, in reasonable reliance upon such express warranties, prescribed for Plaintiffs' decedents the use of Xarelto®. Plaintiffs' decedents purchased and ingested Xarelto® as prescribed and instructed by Plaintiffs' decedents' physicians, leading to Plaintiffs' decedents deaths.

156. As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs' decedents were exposed to Xarelto®, and Plaintiffs suffered and continue to suffer from damages as set forth in this Complaint.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such

Pollard • Bailey

1  other relief as the Court deems proper.

2  ### COUNT VIII

3  ### BREACH OF IMPLIED WARRANTY

4  157.    Plaintiffs incorporate by reference each and every paragraph of this Complaint as

5  if fully set forth herein.

6  158.    Defendants researched, developed, designed, tested, manufactured, inspected,

7  labeled, distributed, marketed, promoted, sold and/or otherwise released into the stream of

8  commerce Xarelto®, in the course of same, directly advertised or marketed the product to the

9  FDA, healthcare professionals and consumers, including Plaintiffs' decedents, or persons

10  responsible for consumer.

11  159.    Defendants impliedly warranted their Xarelto®, which they manufactured and/or

12  distributed and sold, and which Plaintiffs' decedents purchased and ingested, to be of

13  merchantable quality and fit for the common, ordinary, and intended uses for which the product

14  was sold.

15  160.    Defendants breached their implied warranties of Xarelto® sold to Plaintiffs'

16  decedents because this product was not fit for its common, ordinary, and intended use.

17  161.    As a direct, foreseeable and proximate result of Defendants' breaches of Implied

18  warranties, Plaintiffs' decedents suffered grievous bodily injury and ultimately death as

19  described above, when Plaintiffs' decedents ingested Xarelto®, in reasonable reliance upon the

20  implied warranties, leading to Plaintiffs' decedents' injuries and deaths.

21  162.    As a direct and proximate result of the actions and inactions of the Defendants as

22  set forth above, Plaintiffs' decedents were exposed to Xarelto® and suffered the injuries and

23  damages set forth hereinabove.

24  WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory

25  and punitive damages, together with interest, costs of suit, attorneys' fees, and all such

26  other relief as the Court deems proper.

27

**COMPLAINT FOR WRONGFUL DEATH**

Pollard ▪ Bailey

## COUNT IX

## FRAUD

163. Plaintiffs incorporate by reference each and every paragraph of this Complaint as if fully set forth herein.

164. Defendants, having undertaken the manufacturing, marketing, dispensing, distribution and promotion of Xarelto® described herein, owed a duty to provide accurate and complete information regarding these products.

165. The Defendants knew or should have known, that Xarelto® was unreasonably dangerous and defective, and caused serious, at times fatal, irreversible bleeds.

166. Despite their knowledge, the Defendants omitted material facts in the disclosures they made to the public, the medical community and to consumers, including the Plaintiffs' decedents and their prescribing physicians, concerning the use and safety of Xarelto®.

167. The Defendants made untrue, deceptive, and/or misleading representations of material facts, and omitted and/or concealed material facts from the public, including the Plaintiffs' decedents and their prescribing physicians, concerning the use and safety of Xarelto®.

168. The Defendants' practices relating to their promotion of Xarelto® created and/or reinforced a false impression as to its safety.

169. The Defendants' practice of promoting Xarelto® placed and continues to place all consumers of Xarelto® at risk for serious injury resulting from its potentially lethal side effects.

170. The Defendants' statements and omissions were made with the intent that the Plaintiffs' decedents and their prescribing physicians, would rely on them.

171. The Plaintiffs' decedents purchased and used Xarelto® for personal, family or household purposes and suffered ascertainable losses of money as a result of the Defendants' use or employment of the methods, acts, or practices.

172. As a direct and proximate result of the Defendants' acts of fraud, the Plaintiffs'

**COMPLAINT FOR WRONGFUL DEATH**

Pollard • Bailey

1     decedents suffered irreparable injuries and death.

2     173.    As a direct and proximate result of the actions and inactions of the Defendants as

3 set forth above, Plaintiffs' decedents were exposed to Xarelto® and suffered the injuries and

4 damages set forth hereinabove.

5     WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory

6 and punitive damages, together with interest, costs of suit, attorneys' fees, and all such

7 other relief as the Court deems proper.

8     <u>**COUNT X:**</u>

9     <u>**PUNITIVE DAMAGES**</u>

10     174.    Plaintiff incorporates by reference each and every paragraph of this Complaint as

11 if fully set forth herein and further alleges as follows:

12     175.    Plaintiffs are entitled to punitive damages because Defendants' actions were

13 reckless and without regard for the public's safety. Defendants mislead both the medical

14 community and the public at large, including Plaintiffs' decedents physicians, by making false

15 representation about and concealing pertinent information regarding Xarelto®. Defendants

16 downplayed, understated and disregarded its knowledge of the serious and permanent side

17 effects associated with the use of Xarelto® despite information demonstrating the product was

18 unreasonably dangerous.

19     176.    As a proximate result of Defendants' acts and omissions, Plaintiffs' decedents

20 suffered internal bleeding/hemorrhaging, stroke and or heart failure, all resulting from

21 Plaintiffs' decedents' ingestion of Xarelto®.

22     177.    Defendants' actions were performed willfully, intentionally, and with reckless

23 disregard for the rights of Plaintiffs' decedents and the public.

24     178.    Defendants continued to promote the safety of Xarelto®, while providing to

25 consumers no warnings or insufficient warnings about the risk of irreversible bleeding

26 associated with it, even after Defendants knew of that risk.

27     179.    Defendants' conduct was committed with knowing, conscious and deliberate

**COMPLAINT FOR WRONGFUL DEATH**

Pollard ▪ Bailey

disregard for the rights and safety of consumers, including the Plaintiffs' decedents, thereby entitling the Plaintiffs to punitive damages in an amount appropriate to punish the Defendants and deter them from similar conduct in the future.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment for damages against Defendants for all damages  allowable by law against Defendants together with interest, costs and attorney's fees, including but not limited to those damages provided pursuant to applicable law, set forth below, and requests a trial by jury of all issues so triable, to wit:

1.  For judgment for damages sufficient to compensate for damages, including but not limited to past, present, and future economic expenditures in connection with the injuries sustained by Plaintiffs as a result of their decedents' ingesting Defendants' Xarelto®;

2.  Medical expenses due to the Plaintiffs' decedents' pre-death injury may be recovered;

3.  Punitive damages in an amount to be awarded as provided by law; and

4.  For all other just and proper relief.

**COMPLAINT FOR WRONGFUL DEATH**

Pollard ● Bailey

1

## <u>DEMAND FOR JURY TRIAL</u>

2

The Plaintiffs hereby demands a trial by jury on all Counts and as to all issues.

3

4

Respectfully submitted this 13th day of April, 2015.

5

By: **/S/ Steven J. Brady, Esq.**
Steven J. Brady, Esq. (California Bar No. 116651)

6

Dylan F. Pollard, Esq. (California Bar No. 180306)
Steven Stein, Esq. (California Bar No. 52829)

7

BRADY LAW GROUP
1015 Irwin Street

8

San Rafael, CA  94901
Telephone:     (415) 459-7300

9

Fax:             (415) 459-7303
E-Mail:         mail@bradylawgroup.com

10

11

ATTORNEYS FOR PLAINTIFFS

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**COMPLAINT FOR WRONGFUL DEATH**